UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ORION CORPORATION | : | |
| | : | Civil Action No. 07-5436 (MLC) |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | |
| v. | : | RECEIVED |
| | : | |
| SUN PHARMACEUTICAL INDUSTRIES, LIMITED, | : | FEB 22 2010 |
| | : | AT 8:30_____M |
| Defendant/Counterclaim Plaintiff. | : | WILLIAM T. WALSH |
| | : | CLERK |
| ORION CORPORATION | : | |
| | : | Civil Action No. 08-5545 (MLC) |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| SUN PHARMA GLOBAL, INC., | : MEMORANDUM OPINION AND ORDER |
| | : | |
| Defendant/Counterclaim Plaintiff. | : | |

**ARPERT, U.S.M.J.**

This matter comes before the Court on a Motion by Defendants Sun Pharmaceutical Industries, Limited and Sun Pharma Global, Inc. (collectively "Sun" or "Defendants") to Compel Plaintiff Orion Corporation ("Orion") and third party Novartis Pharmaceutical Corporation ("Novartis") (collectively "Orion/Novartis") to produce documents which Defendants contend are being impermissibly withheld [dkt. entry nos. 142 and 61, respectively]. Orion/Novartis opposed the Motion on August 24, 2009. Sun filed a reply brief on September 14, 2009. The Court heard oral argument on November 9, 2009 and directed the parties, specifically Sun and Ms. Gwendolyn Zeno ("Ms. Zeno"), who is an employee of Novartis, to

submit additional briefing to address the threshold question of whether the documents at issue are entitled to protection under the attorney-client privilege. Ms. Zeno submitted her brief on the privilege issue as a separate Motion seeking a determination that the materials redacted from Novartis' document production in response to Defendants' subpoena are subject to the attorney-client privilege on November 23, 2009 [dkt. entry nos. 201 and 89, respectively][1]. Ms. Zeno also submitted copies of the disputed materials for *in camera* review. Sun responded to Ms. Zeno's brief on December 7, 2009 and Ms. Zeno filed a reply brief on December 14, 2009. For the reasons stated herein, Sun's Motion to Compel is granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

Orion alleges that Sun has infringed its U.S. Patent Nos. 6,500,867 (the "'867 patent") and 5,446,194 (the "'194 patent") by submitting two Abbreviated New Drug Applications to market generic versions of Orion's Parkinson's disease drugs Stalevo® and Comtan®. Novartis is the exclusive licensee for both the '194 and '867 patents, and holds an exclusive distributorship, supply and marketing agreement with Orion to sell and market both Stalevo® and Comtan® in the United States and other countries around the world. (*See* Sun's Br. at 3.) Novartis employee Gwendolyn Zeno was identified by Orion in its initial disclosures and was thereafter identified as a witness it intended to call at trial. On June 2, 2009, Ms. Zeno was deposed in response to a subpoena *duces tecum* issued by Sun.

A number of documents were produced by Ms. Zeno and Novartis, through Orion, in response to the document requests related to Ms. Zeno's testimony. Specifically, the document

---

[1] The Court will not construe dkt. entry nos. 201 and 89 as a separate motion, but rather as additional briefing in further opposition to Sun's Motion to Compel.

production included "various 'presentations' made by Novartis employees regarding, *inter alia*, brand strategy, net sales projections, and market overviews for Stalevo® and Comtan® . . . [as well as] U.S. sales figures for both drugs at issue since 1999." *Id.* at 3-4. After reviewing the documents, Sun requested a privilege log because neither Orion nor Novartis provided any explanation as to why certain documents had been redacted or withheld. *Id.* at 4. On June 1, 2009, Orion/Novartis produced a privilege log that contained six entries. No recipients for the entries were identified. *Id.* However, during Ms. Zeno's deposition, "[c]ounsel for Orion/Novartis [*sic*] represented that an effort would be made to determine the recipients of the Novartis presentations, because Ms. Zeno was unable to testify as to the extent these presentations were disseminated throughout Novartis or state with any specificity which individuals would have actually had access [to them]." *Id.* at 5. Novartis points out that "[e]ven though Sun was told by Ms. Zeno during her deposition that she and indeed all Novartis employees are under an annually-updated obligation to maintain confidential any proprietary material, Sun requested an accounting of who were the recipients of the redacted [materials]." (Novartis' Opp'n Br. at 3.)

On June 12, 2009, Orion/Novartis requested that Sun destroy certain documents produced during Ms. Zeno's deposition because they were inadvertently produced with unredacted information which Orion/Novartis maintains is protected by the attorney-client privilege. (Sun's Br. at 5-6.) Also, on June 12, 2009 Orion/Novartis produced redacted marketing materials that removed any reference to patent expiry or generic threats as well as a second privilege log that, similar to the first, failed to disclose the identity of the recipients of the redacted documents. *Id.* at 6. On July 6, 2009, Orion provided Sun with the dates on which the presentations were given

3

and a list of who had received copies of the four presentations. *Id.* On July 8, 2009, Sun responded that "it was impossible to evaluate the propriety of the privilege assertion . . . [and, therefore,] requested that Orion provide additional information, including titles and responsibilities of the individuals who received the presentations." *Id.* at 6-7.

The information Sun requested on July 8, 2009 has not been provided; therefore, Sun filed the instant Motion to Compel production of the documents it claims were impermissibly identified as being withheld on Novartis' June 12, 2009 privilege log.

### A. Sun's Arguments in Support of the Motion to Compel

Sun makes two arguments in support of the Motion to Compel. Specifically, Sun argues (1) that the Novartis documents are relevant to Sun's invalidity arguments because Orion has asserted that "commercial success" should obviate any finding of obviousness-type double patenting and (2) because neither Orion or Novartis has established that the Novartis documents are protected by the attorney-client privilege. *Id.* at 7-8.

Sun maintians that "[t]hese projected sales which Orion/Novartis asserts are privileged are directly relevant to . . . establishing whether there is a nexus between the patented feature and the commercial success." *Id.* (citations omitted.) In addition, Sun argues that Orion and Novartis have not established that the withheld documents are protected by the attorney-client privilege because they are unable to explain the full extent of the disclosure of the documents and have not met their burden of establishing that the known recipients needed to know the allegedly privileged information. *Id.* at 8. Sun also argues that Novartis' June 12, 2009 supplemental privilege log fails to provide any information as to who attended the presentations. *Id.* Sun asserts that "[t]he privilege log 'must state their claim [to the attorney-client privilege] expressly

4

by 'describing the nature of the documents, communications or things not produced.'" *Id.* at 9 (quoting FED. R. CIV. P. 26(b)(5)). Sun also asserts that "[i]f a party's description of a document fails to satisfy this standard, disclosure of the document is an appropriate sanction." *Id.* (citing *Schwarz Pharma, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2007 WL 2892744, *2 (D.N.J. 2007)). Sun further asserts that "the *Schwarz Pharma* Court "was particularly concerned with Plaintiff's inability to identify the recipients of the documents in question . . . [and] was not persuaded by . . . its blanket assertion that as a matter of practice Schwarz Pharma would not have disseminated proprietary marketing strategy beyond people that needed to know." *Id.* 10 (citations omitted.)

Sun argues that "[h]ere, Novartis's failure to fully explain the roles of the recipients, the identities of the attendees, or why the recipients needed to know or have access to these presentations falls squarely within *Schwarz Pharma* – and for exactly the same kinds of market projection and marketing documents." *Id.* Sun also argues that "[i]t is clear from Ms. Zeno's testimony that she does not know the extent of disclosure at Novartis . . . besides 'management' and 'day-to-day' individuals." *Id.* at 11. Sun further argues that "courts have also required production of documents where the privilege log describes the withheld communication simply as being disseminated to 'management.'" *Id.* at 12 (citing *Smithkline Beecham Corporation*, 243 F.3d 565 (Fed. Cir. 2000)). Lastly, Sun contends that "although Orion/Novartis has provided a list of recipients and general departments to which these individuals belong, the description of the documents' recipients ultimately amount to no more than the information Orion/Novartis previously provided – that the recipients are part of the 'Novartis Marketing management.'" *Id.* Sun argues that any privilege has been waived as a result of the widespread dissemination of the

5

presentations to individuals beyond those required to have access in order to perform the duties dictated by their employment.

Ultimately, Sun asserts that the Court should grant the Motion to Compel because "Novartis is the party asserting the privilege here and it has failed to satisfy its burden of establishing the identities and roles of all those who had access to the marketing materials in question and exercised such access." *Id.* at 13.

### B. Novartis' Arguments Opposing the Motion to Compel

In opposition, Novartis argues that the Motion to Compel should be denied because "(1) Sun's waiver argument is inapplicable to the redacted pages and (2) Sun fails to identify the relevance of each redacted page that Sun seeks to be produced in unredacted form." (Novartis' Opp'n Br. at 2.) Novartis further argues that sanctions against Sun are appropriate "since Sun improperly includes direct quotes in its brief from material that Sun knew or should have know were deemed privileged by Novartis, contrary to Paragraph 6 of the Stipulated Protective Order." *Id.*

With regard to Sun's claim that Novartis has not proved that the redacted documents are protected by the attorney-client privilege, Novartis asserts that "[t]he entries under the 'Description' column of both the June 1 and June 12 logs of privileged redactions identify the existence of an underlying privileged attorney-client communication for each redaction made." *Id.* at 5. Novartis also asserts that "Sun has not contested the privileged status of these underlying communications with counsel, except to argue subsequent waiver via the presentations." *Id.* Novartis further asserts that "Ms. Zeno stated that the information redacted from each presentation was legal advice she received from Mr. Waibel, Novartis counsel." *Id.* at

6

6.

Novartis argues that "[t]he privileged status of Novartis's communications was not waived by the dissemination of the privileged information via presentations to those within Novartis that needed to know." *Id.* Novartis also argues that "[i]t is [*sic*] well-settled that 'documents subject to the privilege may be transmitted between non-attorneys . . . so that the corporation may be properly informed of legal advice and act appropriately.'" *Id.* (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D.Pa. 2005) (quoting *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)). Novartis contends that the June 1 and June 12, 2009 privilege logs "explain that the privileged information, provided by Mr. Waibel, was relayed via four presentations to those who needed the information in order to perform their duties at Novartis." *Id.* Novartis further contends that "[t]he redacted portions reveal confidential information related to Orion's pending litigations with Sun, Wockhardt USA Inc., and Wockhardt Ltd., including patent-related information that Ms. Zeno obtained from Novartis patent counsel." *Id.* at 7. Novartis emphasizes that, "Sun objects to Novartis's alleged failure to identify with specificity the recipients of the presentations, [y]et the courts have noted that 'failure to identify specific individuals in [the] description of the authors and the recipients, in and of itself, does not vitiate their assertion of the attorney-client privilege.'" *Id.* at 7-8 (quoting *Schwarz Pharma*, 2007 U.S. Dist. LEXIS 72607 *8.) Novartis asserts that all of its employees sign an annually-updated agreement to maintain Novartis' confidential information, thus all employee recipients of the presentations at issue understand that presentations of this nature (i.e. containing confidential information) are not to be further disseminated. *Id.* at 10.

Next, Novartis argues that the presence of the documents in a company database does not

7

waive the attorney-client privilege because "'[t]he fact that some unauthorized corporate personnel may purposely or inadvertently read a privilege document does not render that document nonconfidential.'" *Id.* at 11. (quoting *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 142 (D. Del. 1982)). Novartis asserts that the manner in which the presentations at issue are stored is more secure than the storage system considered by the court in *James Julian*. *Id.* at 12. More specifically, Novartis explains that the presentations at issue are stored on a server maintained by its Commercial Strategy and Operations department and to access a copy of a document requires one to provide an explanation of the need to access the presentation. *Id.* Therefore, Novartis maintains, it has not waived its privilege claims.

Novartis also argues that Sun's Motion should be denied because Sun has failed to carry its burden to demonstrate that the discovery sought is relevant. *Id.* at 13. Novartis asserts that "[a]s the movant for discovery, the burden rests on Sun to show that the discovery sought is relevant to the pending litigations before the burden shifts to Novartis – the party opposing discovery – to prove that discovery may not be had." *Id.* Novartis maintains that the Court should reject Sun's claim that the requested materials constitute "projected sales" that are relevant to Sun's invalidity arguments because Orion has asserted that "commercial success" should obviate any finding of obviousness-type double patenting. Specifically, Novartis argues that projected sales are an unreliable indicator of commercial success. *Id.* at 14. Further, Novartis argues that Orion's June 9, 2009 letter to the Court "suggests **nothing** about Orion making a claim of commercial success based on 'projected sales' to rebut the obviousness-type double patenting charges, [but] [r]ather, Orion merely told the Court that 'Orion believes the factual issues that it expects to exist [*sic*] are likely to preclude summary judgment." *Id.*

8

Therefore, Novartis maintains that Sun's Motion should be denied because it has failed to demonstrate why the discovery sought is relevant.

Lastly, Novartis argues that sanctions should be imposed against Sun for its "improper inclusion in its memorandum of direct quotes and paraphrasing from material that Sun knew or should have known is deemed privileged by Novartis." *Id.* at 15. Novartis points out that "there is no question that Sun has knowledge of the Stipulated Protective Order ("the Order") . . . [because] Sun relied on the Order as a basis for its [M]otion." *Id.* at 17. Novartis argues that Sun was on notice of the privileged nature of certain information and was not permitted to disclose the substance of that information, even under seal, but instead should have sought an *in camera* review by the Court to confirm relevance and any waiver of privilege. *Id.* at 19. Novartis concludes that in addition to denying Sun's Motion to Compel, the Court should impose sanctions against Sun for its disclosure of privileged material.

**C.    Sun's Reply Arguments in further Support of the Motion to Compel**

In reply Sun argues, (1) Novartis fails to clearly delineate the extent of dissemination and to explain why the allegedly privileged information was necessary for the recipients to perform their duties; (2) the information sought is clearly relevant as previously held by the Court; and (3) Sun's submission of the challenged information to the Court under seal was proper.

Sun asserts that "Orion fails to unambiguously and consistently explain why the over 112 respective recipients of the presentation identified on the Third Privilege Log, many of whom appear to not be associated with the Stalevo® and Comtan® projects, 'needed to know' the expected expiration date of the '194 patent." (Sun's Reply Br. at 1.) Sun also asserts that Ms. Zeno's "declaration, at most, states that the recipients understood the information to be

9

'confidential' – not 'privileged.'" *Id.* at 2. Sun further asserts that "[t]he '194 patent expiration date alone is not dispositive of generic competition market entry, and had no meaningful consequence to most, if not all, of the recipients . . . [and] [m]oreover, a number of the recipients belong to groups that have little or nothing to do with Stalevo® and Comtan®." *Id.* at 6-7. Finally in this regard, Sun notes that while the presentations at issue are stored on a limited access database, Ms. Zeno's declaration fails to identify the number of individuals who have access. *Id.* at 8.

Sun with respect to relevance, argues that "[t]he Court, in granting Sun's Motion to Supplement, found 'that the 'new evidence' [the expected 2011 '194 patent expiration date] appears to be relevant to Orion's pending Motions to Dismiss under Rule 12." *Id.* Sun further argues that the information sought is relevant because Orion has asserted commercial success as a defense to Sun's assertions of the '194 patent. Sun contends that "[t]hese projected sales are particularly relevant given Ms. Zeno's testimony that Stalevo® did not meet commercial expectations." *Id.* at 9.

Lastly, Sun argues that its submission of the challenged information to the Court under seal is proper because "Rule 45 provides that '[a]fter being notified, a party . . . may promptly present the information to the court under seal for a determination of the claim' of privilege." *Id.* at 10. Sun asserts that the request for sanctions should be denied because it properly "provided the Court with a copy of the allegedly privileged documents under seal in connection with challenge of the assertion of privilege as expressly provided for by both the Protective Order and the Federal Rules." *Id.*

    **D.**    **Ms. Zeno's Arguments in further Opposition to the Motion to Compel**

10

Ms. Zeno argues that the redacted portions of her document production reveal confidential communications between herself and Novartis in-house counsel, Mr. Waibel and are therefore entitled to the attorney-client privilege. (Ms. Zeno's Br. at 3.) She asserts that "prior to generating each presentation, she regularly sought legal advice from Mr. Waibel in his capacity as an attorney, Head of U.S. Patent Litigation for Novartis." *Id.*

Ms. Zeno relies upon the proposition that "[i]n the corporate setting, '[a] corporation may claim the privilege for communications between its counsel and its employees who have authority to act on its behalf.'" *Id.* at 6 (quoting *In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997)). She explains that "as Brand Director for Stalevo®, [she] had the responsibility to prepare various presentations to Novartis management regarding Cotman® and Stalevo® [and] [t]hat project dictated that [she] regularly seek legal advise from Mr. Waibel in his capacity as Novartis' attorney." *Id.* She further explains that "Mr. Waibel's legal advice was then relayed . . . via her four presentations to different subgroups of Novartis management" and asserts that "[i]t is well-settled that such communications between a corporation's employees, relaying legal advice from an attorney, are also protected by the attorney-client privilege." *Id.* at 7 (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005)).

Lastly, Ms. Zeno argues that "[a] review of the redacted pages will show that the information relayed from Mr. Waibel constitutes advice regarding legal, rather than simply business, matters." *Id.* at 8. It is asserted that the redacted portions of Ms. Zeno's presentations are entitled to protection under the attorney-client privilege because "(1) an attorney-client relationship existed between Ms. Zeno and Mr. Waibel; (2) Ms. Zeno and Mr. Waibel communicated with each other for the purpose of securing legal advice; (3) Ms. Zeno relayed that

11

legal advice via her presentations to Novartis management; and (4) Ms. Zeno made a claim of privilege for these presentations." *Id.* at 10-11.

### E. Sun's Arguments in further Support of the Motion to Compel and in Reply to Ms. Zeno's Brief

Sun argues that Ms. Zeno and Novartis have failed to satisfactorily establish that the information redacted from Ms. Zeno's presentations is in fact privileged. (Sun's Opp'n Br. at 1.) Sun also argues that Zeno/Novartis initially asserted and described in its privilege logs "that the redacted information represented business information, i.e., possible scenarios as to when Novartis could expect generic competition in the Stalevo® and Cotman® markets . . . so Sun has no choice but to assume that all of the redacted information represents mere possible generic market entry scenarios." *Id.* at 1-2. Therefore, Sun maintains, "to the extent that Zeno/Novartis now asserts that the redacted information represents anything more than mere business scenarios, Zeno/Novartis should be precluded from retreating from and changing their earlier representations." *Id.* at 2. Sun further argues that "Zeno/Novartis' subsequent (and untimely) withdrawal of certain assertions of privilege further calls into question Zeno/Novartis' continued assertions of privilege . . . ([and was done] presumably to avoid the consequences of waiver)." *Id.* at 3-4.

Sun asserts that it did not previously raise the underlying issue of privilege because distribution of Ms. Zeno's presentations to 112 Novartis employees who were broadly identified as part of "management" without further specification warranted a finding of waiver. *Id.* at 7. Sun also asserts that "Ms. Zeno has declared that she 'believed' only that the 112 recipients understood the information to be <u>confidential – not privileged</u>." *Id.* at 8. Sun further asserts that "Zeno/Novartis have characterized the redacted information as merely patent expiration scenarios

12

of a business nature." *Id.* at 8. Noting that the presentations were placed on the company database, with access limited subject to undisclosed criteria, Sun argues "[t]he act of wide disclosure to such a varied and diverse group suggests that the dissemination was not intended to have either solicited or provided legal counsel that would have been relevant to each of the 112 managers and assistants." *Id.* at 14. Therefore, Sun argues that it is entitled to production of unredacted versions of the documents listed on the June 12, 2009 privilege log, and all documents relating thereto, because "Zeno/Novartis' treatment of the allegedly privileged information illustrates that Zeno/Novartis did not consider the information to be privileged, it was instead of a general informational nature." *Id.*

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 26(b)(1)

As a general rule, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Although relevant information need not be admissible at trial, courts refuse to order discovery if the information being sought is (1) irrelevant to the claim, or (2) protected by a recognized privilege. *Id.*; *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Township of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. Nov. 1, 1996). Notably however, the scope of discovery is not without its limits.

The documents that are the subject of the instant Motion to Compel were created and

13

authored by employees of Novartis, which is the exclusive licensee of the '867 and '194 patents, which are the patents-in-suit in this litigation. The allegedly privileged documents are each redacted in some form, and were included in presentations detailing commercial sales of Stalevo® and Cotman®, which are allegedly covered by the '867 and '194 patents. The redacted documents were produced to Sun in connection with a subpoena served upon Ms. Zeno. Having considered the parties' arguments on this subject, the Court concludes the subject materials are relevant as they are reasonably calculated to lead to admissible evidence pursuant to the Rule 26(b)(1) standard since the commercial success of Stalevo® and Cotman® is relevant to Sun's invalidity defense.

### B.  Privileged Nature of the Requested Documents

When a document is relevant to the subject matter of an action, the Court may order a party to produce it unless the document is protected by a recognized privilege. FED. R. CIV. P. 26(b)(1). At the outset, FED. R. EVID. 501 provides that evidentiary privileges are "governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience," thus the law of Third Circuit controls with respect to procedural questions, such as the assertion of the attorney-client privilege. The attorney client privilege applies as follows:

> (1) the asserted holder . . . is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar of a court . . . and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, . . . and (4) the privilege has been (a) claimed and (b) not waived by the client.

14

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (quoting *United States v. United Shoe Machinery Corp.*, 80 F. Supp. 357, 358-59 (D. Mass. 1950)). Communications between an attorney and client are protected by the attorney-client privilege with the purpose of this privilege being to promote frank discussions between attorneys and their clients. *Upjohn v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L. Ed. 2d 39 (1976). The privilege is not unconditional. It can be waived if the privileged information is communicated to outside parties. *U.S. v. Rockwell International*, 897 F.2d 1255, 1265 (3d Cir. 1990). Because the privilege may be employed to obstruct the search for truth, the privilege is not absolute and care must be taken to insure that the privilege is not abused. *United Jersey Bank v. Wolosoff*, 196 N.J. Super 553, 561-62 (App. Div. 1984).

The attorney-client privilege "unquestionably extends to corporations which must act through agents, including their officers and employees." *Wolosoff*, 196 N.J. Super at 562 (citing *Macey v. Rollins Environmental Services*, 179 N.J. Super 535, 540 (App. Div. 1981)). The "necessity for full and open disclosure between corporate employees and in-house counsel . . . demands that all confidential communications be exempt from discovery." *Wolosoff*, 196 N.J. Super at 562 (citations omitted). However, the privilege is limited to "confidential communications made within the context of the strict relation of attorney and client." *Id.* Generally, when a party discloses privileged information to a third party, the privilege is extinguished, and the document is discoverable. *See in re Teleglobe Commc'n Corp.*, 493 F.3d 345, 364 (3d Cir. 2007).

The burden of proving privilege rests on the party resisting disclosure. *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993) (citing <u>*Fischer v. United States*</u>, 425

U.S. 391 (1976)). Therefore, it is the responsibility of Novartis to prove that the information redacted from Ms. Zeno's document production is protected. Sun argues that the redacted information is not privileged and, if the Court was to conclude that it is privileged, Zeno/Novartis have waived the privilege.

It is evident to the Court that (1) an attorney-client relationship existed between Ms. Zeno and Mr. Waibel; (2) the communications between Ms. Zeno and Mr. Waibel are within the boundaries of the attorney-client relationship as they were for the purpose of securing legal advice; (3) Ms. Zeno relayed that legal advice via her presentations to other Novartis employees; and (4) Ms. Zeno has asserted a claim of privilege over these portions of presentations. However, the Court recognizes an issue as to the adequacy of the claim of privilege asserted over these presentations.

Novartis must state its privilege claim expressly by "describ[ing] the nature of the documents, communications, or things not produced." FED. R. CIV. P. 26(b)(5). The failure to identify with specificity the recipients of the information alleged to be privileged does not necessarily void the assertion of the privilege. However, such failure requires enhanced scrutiny to ensure that the privilege was not waived by disseminating the information to those who did not require access to it. *See Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005). Novartis produced the June 12, 2009 supplemental privilege log that identified redacted sections of the Novartis marketing documents as constituting privileged information. Novartis contends that there were 112 recipients of the confidential presentations at issue and all were members of Novartis management who understood that Novartis employees are under an annually-updated obligation to maintain the confidentiality of any proprietary material. Novartis

further contends that the presentations are stored on a server maintained by the Commercial Strategy and Operations department and to access a copy of a document requires an explanation of the need to access the presentation.

Sun argues that Novartis has failed to both adequately identify the individuals who received copies of the presentations and to explain why these individuals needed the asserted privileged information to carry out their employment duties. The Court agrees with Sun's contentions in so far as it is not abundantly obvious that all of the recipients of the presentations required access to the information that they contained. Ms. Zeno/Novartis' broad classification of the 112 recipients of the presentations as "management" does not convince the Court that dissemination was limited to individuals who needed to know the information contained in the presentations. *Schwarz Pharma., Inc., et al., v. Teva Pharmaceuticals USA, Inc.*, 20007 U.S. Dist. LEXIS 72607 *12; *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 538 (N.D. Ill. 2000) ("General, group-wide descriptions such as 'management' do not allow for the court to assess whether the recipients require, or have the capacity to act upon, the information distributed"). Therefore, based upon the information presented the Court finds that Ms. Zeno/Novartis have waived the attorney-client privilege with respect to the withheld/redacted

### C. Sanctions

The Court concludes that an in-depth discussion regarding Novartis' request for sanctions against Sun for its use of direct quotes and paraphrasing of material deemed privileged by Novartis is unwarranted. The Court finds that Sun provided the Court with a copy of the allegedly privileged documents under seal in connection with its challenge of the assertion of privilege as expressly provided for by both the Protective Order and the Federal Rules.

Accordingly, the Court denies Novartis' request for sanctions.

### III. CONCLUSION

The Court having considered the papers submitted and the argument of counsel, as well as having reviewed the materials submitted for *in camera* review, and for the reasons set forth above,

IT IS on this 18th day of February, 2010

**ORDERED** that Sun's Motion to Compel Plaintiff Orion Corporation and third party Novartis Pharmaceutical Corporation to produce the documents withheld pursuant to Novartis' June 12, 2009 supplemental privilege log [dkt. entry nos. 142 and 61] is **GRANTED**; and it is further

**ORDERED** that Ms. Zeno/Novartis shall produce the documents listed on its June 12, 2009 privilege log and all documents relating thereto to Sun no later than **March 1, 2010**; and it is further

**ORDERED** that Novartis' application for sanctions is **DENIED**; and it is further

**ORDERED** that the Clerk of Court shall terminate these Motions [dkt. entry nos. 142 and 61] and the additional briefing in further opposition to Sun's Motion to Compel which was filed as a Motion [dkt. entry nos. 201 and 89] accordingly.

s/ Douglas E. Arpert
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**
